V. O. L. v. Vickie Glisson Good morning, Your Honors, and may it please the Court, I am the counsel for the appellants, the family, the children D.O., A.O., and their great-aunt R.O. And I'd like to reserve three minutes, Your Honor, for rebuttal. All right. This family's claim passes every test for enforceability under Section 1983. The plain and simple reading of the statute, the facts, and the case law really leads to the conclusion that Congress did grant this family a private right of action to enforce their federal rights to foster care maintenance payments under 42 U.S.C. 672. Respectfully, the district court misconstrued the Gonzaga and Blessing tests. First, it ruled that the statute Let me ask you a question by way of background. As I understand, if there's complete legal guardianship, your client wouldn't be able to get payments and could get those payments only if the child was in foster care. But I don't see in the record anything that indicates whether or not we're dealing with a case of complete legal guardianship or foster care. So we really can't address that issue, can we? Your Honor, the children are not in legal guardianship. They were removed from their mother in a dependency, neglect, and abuse action, according to the statute. That's one of the criteria for them to receive the payments. They were adjudged to be neglected children. The cabinet then tries to find a relative, a relative foster placement, or if there's no relative, the child will go into non-relative foster care. In this case, the child, the great aunt, took the children. And I got involved because I was appointed to represent the boys. And originally, one child, she could not afford to take both. But it's not in the record whether the child is in legal guardianship. You're right, Your Honor. We're not arguing that the children are in legal guardianship. You didn't get that far because the judge cut you off with the no right of action, isn't that what happened? Yes, Your Honor. That's right. So if we agree with you that there is a private right of action under the Child Welfare Act, it goes back in order to clear up the record as to whether full guardianship has been awarded and if not, what the payments ought to be, et cetera, et cetera. Is that right? It would be a fair reading, Your Honor. Well, what are you asking us to do? We're asking you to actually find that the children are entitled to the payments. There is no legal guardianship, but if that is a factual issue, I can certainly understand it being. Well, if it's not clear from the record, we're going to have a hard time doing that. I just would suggest to you. So if there's someplace in the record that it is clear, if you'd let us know, we'd certainly look at it. Like right now. So I understand the question is, is there anywhere in the record that shows these children are not in legal guardianship or that they are in legal guardianship? Either way. It's just unclear. We don't know the state law on this. I don't think it's there for us. And your position is that they're not in legal guardianship. Is that right? May I ask the court's definition of legal guardianship? Well, there's something about a permanent placement. If there has been an order permanently placing them with this ban. Foster kids get money. Adopted kids don't. Okay. They are not in legal guardianship. It is in the record. The record shows that the judge in the underlying DNA action granted temporary custodial custody to the great aunt and to the neglectful mother. What happened, the mother was crying and she hadn't done anything on her case plan. And this is very, and counsel will agree, this is very unusual. They rarely do it this way, but he granted joint custody to the neglectful mother in addition to the great aunt. This was very unusual, but that's how the case ended, with temporary custody. There is no permanent legal guardianship. That's in the record, Your Honor. So I would posit that as the answer. There is no legal guardianship. It's in the record. Temporary, custodian. When you sit down, why don't you pick the place you think is so clear? Because we don't think so. I believe our stipulations did stipulate that children were in temporary custody. Just point us to it, and that's all we need. Okay.  You may proceed with the argument. In the meanwhile, maybe you can, when you get back up for rebuttal, you can give us that citation. I'll try, Your Honor. I'll try. In regards to the, would the court want to hear the arguments in terms of private enforceability? Well, it's your argument, and we'll let you proceed. The district court respectfully first ruled incorrectly that the statute has an aggregate focus and not an individual focus. The statute says each state, any states that have a plan, must make, shall as a word, shall make foster care maintenance payments to each child who qualifies. I mean, it couldn't be more direct and individually focused than the statute has written. The court said that what the statute describes as the proper recipients, that is children who have been abused and are poor and are put into an approved foster home, the judge ruled that those were qualifying events, and therefore the statute was focused on the state and not the children. But that can't be right. That's an illogical way to look at it because that presupposed that those benefits were already out there. But, in fact, they weren't out there. This statute creates those rights. There would be no foster care maintenance payments without the statute that we are relying upon. The court also held that substantial compliance precluded this, foreclosed them having a right. But that's not right either. That is not a fair reading of blessing and Gonzaga. The blessing court made a specific point of saying that clients or plaintiffs should come forth and make their claim point with specificity to the statute that grants them their claim. And that's exactly what our clients did. The court, the case in the court that the district court relied upon and that counsel relies upon, Midwest Foster Care, that case was a split decision. And the key distinction there is that our clients are the children themselves. We are not foster care providers. Midwest dealt with, in all the cases, and the majority of which found a private right of action regardless, were foster care providers who were already getting benefits and wanted more. Even in those cases, the majority of courts that have addressed the issue ruled that they had a private right of action. Midwest did not. But our case is the children who were not the foster care providers, although our O.S., she is the foster care provider, but the children themselves are bringing this action because they're not getting the benefits that the statute demands they should get. And further, that case said Midwest held, even with substantial compliance language, that alone does not foreclose a private right of action. There must also be something in the statute that triggers a funding prohibition. Well, that does not exist in the statute. There is no funding prohibition in 42 U.S.C. 672B. To make the case for private enforceability very clear, Gonzaga dealt with FERPA, the Family Educational Rights Privacy Act. So in FERPA, the statute involved was that no funds shall be made available to any institution that divulges confidential information, I'm paraphrasing. Again, that was not a statute that awarded a plaintiff any benefit, unlike ours, which it certainly does. So the court in Gonzaga said that's two steps removed because the plaintiff there was a student who alleged that his confidentiality had been breached. Well, the statute wasn't directed to him. It was directed to the state. They shall not divulge information. This statute is far different. Each state shall make payments to each child who qualifies. And the key distinction between our case and Gonzaga and Blessing and Midwest, well, not Midwest, but Gonzaga and Blessing, is that the only statutes that they could rely upon the plaintiffs in those cases was the general statute, the one that directs a state not to do something or to do something. Our case involves a statute that directs the state to benefit the plaintiff. And frankly, there can happen to be substantial compliance when the key part of the statute is not being followed, and that is making the foster care maintenance payments. The other key part to our case is that there is no federal review mechanism, and that is one of the key tests in all the cases that find private enforceability. There is no federal review mechanism. So without this Court's ruling in our client's favor, they will be denied their lawful benefits indefinitely, and they meet every test for private enforceability, Your Honors. That will entitle them to due process protection because they will have had a property right, and our final claim was that their equal protection rights had been violated and are continuing to be violated. Under the rational basis test, there is no rational basis for the secretary to discriminate against these children. They all suffered the same trauma of removal from their parent. The policy of the statute is to benefit and protect vulnerable children like these, not only to provide them resources that these are poor children, but also to provide permanency. And the cabinet, that's why we have this problem. They allowed the underlying court to terminate this case with temporary custody and not permanent custody, and that's what the law requires. Thank you, Your Honor. My time is up. Thank you. May it please the Court. My name is Brent Irvin. I'm an attorney with the Cabinet for Health and Family Services, the appellee in the case is Vicki Gleason, the secretary of the Cabinet for Health and Family Services. I think this Court's initial impulse was correct in puzzling over whether this is a justiciable controversy. And so before I get into the Blessing-Gonzaga test, which I do believe the lower court correctly applied, in order to make sure this is not just an academic controversy where there is a circuit split between the Ninth Circuit and the Eighth Circuit, the Court would do well to make sure that these parties actually have standing to bring the case. Now, I'm not an expert on family law. I'm more used to arguing constitutional cases, but I'll try to explain as best I know what the law is on Kentucky for both the removal of children that are being abused or neglected and then the later adoption proceeding if that is necessary. So in Kentucky there's a two-step part. Someone files a claim in family court or district court that a parent is being neglectful or abusive. The court can have an emergency hearing and remove the children if the facts justify that, or the court can wait later and have a final hearing. At the final hearing, the court is supposed to either find, and this is consistent with the federal mandate from the very law we're talking about, the Family Adoption Protection Act, those laws were designed so children do not stay in foster care grift. So the court is supposed to at that time either return the child to the parent or if the parent is not a fit parent, then the court makes other arrangements. Typically that would be leaving the child in state custody and typically then the state would find adoptive parents. Often the foster parents are the ones that want to adopt. Now, there's another alternative which the federal law and state law requires, and that is before you go out and seek a stranger to place the child in a home which are licensed and take lots of testing, you can find a relative. And that's what happened in this case. The great aunt stepped up. We think she's a wonderful human being for doing that. We're not in any way denigrating her. But when you're a relative, you are not automatically a foster care parent. Foster care parents in Kentucky have to have quite a bit of training and then everyone knows you're a foster care parent if you're a foster care parent. If there was a foster care parent before this court today, I would argue they had standing. That's what happened in all the other cases that we're talking about. Now, at the end of the, in this case, there was no termination of parental rights case, but those were also supposed to be expedited. They're not supposed to just leave them hanging open. The reality of what happens, however, is that sometimes these parents are very sympathetic. Often they have addiction issues. Often the judge keeps giving them one more chance. These parents love their children. They can't admit they've got an addiction issue. They frequently fall back into their old ways. And finally, the courts, the law is designed so that the court, the family court is supposed to make a firm decision. The case is over. Permanency is achieved. You do not have cases in legal limbo where children are in permanent temporary custody. I believe that's an oxymoron. It doesn't exist. That's what I think that I, for one, am struggling with, whether or not there has been a permanency determination, whether these children have been discharged. And we don't think it's, I mean, my review of the record shows that we can't tell. The various things are said, but the record's sealed, right? What do you say? Was there, I mean, there's evidence, but we're struggling because there's no, we can't tell what's in the sealed record, whether that was actually permanency. Various parties are referring to a DNA, and it's implicit but not explicit. I think the plaintiff, here's what happened. The plaintiff first tried to get these rights that they assert under the federal law in family court. But the family court denied and said, no, your case is closed. So I think that's a clear indication. The family court thought the case was closed. It had no jurisdiction. Permanency was achieved. So then the plaintiffs turned around and filed the same action in Fayette Circuit Court, asserting their federal right, and, of course, we removed it. The court said permanency's been achieved, but didn't point to that form that typically is filed. Well, I don't know if, you know, I'll have to take it Mr. Daugherty would know, because he was the guardian and lied to him, and I take him at his word as an officer of the court that if the form wasn't filed, it wasn't filed. Still, I think that that is putting form over substance. Perhaps. Why, what could, I don't know, is anybody objecting to this court remanding so that somebody can open that record and this court can be convinced or the trial judge can say permanency? I would not object to that because I think it's an important case, and since there's a circuit split between the circuit. Now, I do want to say, because I don't want to infer, that I think the lower court erred in any way. I think the judge faithfully followed the guidance from Gonzaga and Blessing and the precedent from this court in the case that's, it's not, we don't have any Sixth Circuit precedent that I could find interpreting this particular law, but in the Hewlett v. Roman-Sunsky court, and I believe Judge Daugherty was on that panel, the court. Is that the very recent one? It was a case, you were on the panel, and it had to do with child collection support and some electronic system for setting up, collecting the child support. The plaintiff's alleged that some private contractors had violated their rights by not remitting the money quickly enough and charging some fees. I think I was thinking of the Michigan case that had to do with the SNAP payments that I was on, and that we just decided, which sort of tends to lead me to believe that there was a private right of enforcement in this case. I'm blanking on the name of that case, though. I'm sorry I didn't read that recent SNAP case. I think that when I read the lower court's opinion and followed it very closely, he mostly relied on the New York State v. Citizens Coalition case out of the Eastern District of New York. He relied on, of course, the Midwest case where the majority of the Eighth Circuit said this did not meet the Blessing and Gonzaga test. Some of the language he quoted came from that Hewlett v. Roman-Sunsky case that I referred to earlier where you were on the panel, and it talked about how the courts look at some of these factors. All of these tests are just designed to try to discern congressional intent. Did Congress intend to create a federal right? And the reason the courts have become increasingly less likely to find a federal right is they look at it that the states need clear guidance when they take the federal money. It's like a contract with a third-party beneficiary. The state is entitled to clear guidance to know what the terms of the contract are and that we have to follow certain things. So we think that after Gonzaga, courts are increasingly less likely to find that federal rights are created, and that's why oftentimes you will find the cases pre-Gonzaga are really not very good precedent anymore, or at least I would give them less weight. Of course, Blessing is still good law, but Gonzaga clearly instructed the lower courts how to look at those factors and give more emphasis on the clarity with which Congress needs to create a right. So I don't have anything else to say. I wish I could... I wonder if I could ensure that I'm correct, that you have not identified evidence. You aver that the children have been placed in permanent custody, but you haven't identified evidence in the record to support that. I think generally we're all piecing together, but we just don't know, because it's sealed. Because I wasn't involved in the family court and it was sealed, I don't want to mislead the court. Here's what I do know. I do know that the family court would not decide this issue, and I think it therefore thought it had permanency. That is the reason plaintiff's counsel had to refile in state court. I think if it were truly in limbo... You'd think. Yes. You'd think. Because at some point permanency has to be achieved. The law cannot be that these children are permanently in this netherland of neither permanent nor with the mother. And so I'm sorry that the lower court left the record a little unclear. We tried to stipulate, though. If you look at the stipulations, those are things we all agreed on, and I'm pretty sure we didn't stipulate that this was temporary custody. We've argued all along it's permanent custody based on the inferences and what the family court did, not so much as an order that says, yes, this is definitely permanent. Where did the children live? We have joint permanent. It was temporary, and we sort of gave them to Mama and we gave them to the aunt. But that was the final permanency hearing of the family court. That's the reason we think it was permanency. It can't go on forever. It's just impossible. The law is not designed for those cases to remain in a permanent temporary status. So the inference to me is it's a very strong inference that it was permanent. Thank you, Your Honor. Thank you, and we'll have rebuttal. Thank you, Your Honor. To clarify one point, we filed a motion in the district court case, but the judge never ruled on it. We never even took it further because she ended up taking it. What sort of motion? It was a motion to force the cabinet to make these foster care maintenance payments to the children based on my study of the law. All right. And that was done. The court didn't rule on that motion. The court, it became moot because the great aunt relented and took both children. That's why I was trying to get those children together. So we just let it go on and then eventually he did close the case and that was it. But this issue is still alive. This family was still, and frankly, Your Honor, this is much bigger than just these children. I deal with children all the time going to relative care and they're not getting the payments that they used to get. Before 2013, the state of Kentucky did take the optional kinship care, which counsel put a lot of time in. We never asked for kinship care. Kentucky ended that in 2013. So this issue really didn't come up until recently, since I've been practicing law as a guardian ad litem. I will say also, whether it was temporary custody, I know you need more proof than that, but it was temporary custody. It was not permanent. But beyond that, this is one of those issues that it's an issue capable of repetition but impossible to be resolved. So you can still rule on the principle of law that this family has a private right of action to these payments. And then, sure, if we need to get some more evidentiary evidence to show that they're still in temporary custody, they will continue to get those payments. The very key point is that the policy considerations support the family because the whole Child Welfare Act. Stop just for one minute. Yes, Your Honor. If we determine, if the court confirms for us, if we're still in a quandary here, and I can't speak for our panel, but if the court is unconvinced that it's permanent, once it's permanent, you agree that your children get no money. These children get no money. But the principle, because these children could be, what happens a lot of times, the family dynamics, the custodial relationship fails, and these children will be back with the cabinet. Will go back. And they will be finding another relative. So the issue will still. The issue is relatives should get payment. Yes, Your Honor. While it's temporary. While it's temporary. Now, I can see, once it's permanent, there should have been a permanent custody hearing and proper notice given to the parents and procedures, Kentucky's rules of civil procedures followed, and they have a permanent custody hearing, and that custodian is given permanent custody. And that is the highest level, and that's what this statute, this Child Welfare Act, is all about, resources for children and permanency. So we do agree with that. All right. Thank you. Thank you, Your Honor. Submit it. Honors. There being no further cases for argument, court may be adjourned.